UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| L-3 COMMUNICATIONS INTEGRATED SYSTEMS, L.P., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3: 07-CV-0341-B |
| LOCKHEED MARTIN CORPORATION, | § § § | |
| Defendant. | § | |

## MEMORANDUM ORDER

Before the Court is Defendant's Motion for Stay of All Proceedings ("Motion for Stay") (doc. 19). For the reasons that follow, the Court DENIES the motion.

### I. Factual and Procedural Background

On April 4, 2005, in the U.S. District Court for the Northern District of Georgia, Lockheed Martin Corporation ("Lockheed") filed a complaint for misappropriation and misuse of trade secrets and breach of license agreements against L-3 Communications Corporation and L-3 Communications Integrated Systems, LP (collectively, "L-3") for certain uses of Lockheed proprietary data for the P-3 aircraft. On the same day, but hours after Lockheed had already filed its suit, L-3 filed a separate suit against Lockheed in the U.S. District Court for the Northern District of Texas over the right to use data to refurbish P-3 aircrafts. In the Georgia action, U.S. District Judge Charles A. Pannell enjoined L-3's mirror-image Texas case pursuant to the federal "first-filed" rule. (L-3's Resp. to Mot. for Stay at 2). L-3 proceeded to litigate its claims in Georgia by filing its answer and counterclaim on October 31, 2005. (Doc. 16-2, Ga. Court Order at 2). On October 6, 2006,

1

L-3, allegedly upon learning that Lockheed was interfering with L-3's ability to perform its contract to refurbish P-3s with the Republic of Korea, filed a motion for leave to file an amended and supplemental counterclaim to include antitrust and tortious interference counterclaims. (L-3's Resp. at 2). On February 15, 2007, Judge Pannell denied the motion because he was unable to determine when L-3 learned of Lockheed's injurious conduct. (*Id.*) On February 22, 2007, L-3 again filed a complaint against Lockheed in the Northern District of Texas, this time asserting the antitrust and tortious interference claims they tried but failed to raise in amended counterclaims in the Georgia action. (*Id.*)

On March 12, 2007, Lockheed moved the Northern District of Georgia court to enjoin this case on the grounds that L-R's claims raised here constitute compulsory counterclaims that should have been asserted in the Georgia suit. (*Id.*) On May 16, 2007, Judge Pannell denied Lockheed's motion to enjoin this action, finding that although some overlap exists between the two cases, the minimal extent of the overlap failed to "equate to [Rule 13(a)'s requirement of] 'arising from the same operative facts.'" (Doc. 16-2, Ga. Court Order at 5). On May 31, 2007, Lockheed moved to stay this case in its entirety pending resolution of the Georgia action, claiming that staying this action will prevent the waste of party and court resources and avoid the risk of inconsistent rulings. On August 1, 2007, Lockheed advised the Court that the Eleventh Circuit Court of Appeals has decided that it has jurisdiction to consider its appeal in the Georgia action. In the meantime, discovery has continued in the Georgia action, and a Special Master has been appointed to handle discovery disputes between the parties. (Ga. Action Doc. 194). The Court has considered the arguments and evidence presented by the parties and now turns to the merits of Lockheed's Motion.

## II. Analysis

The Fifth Circuit adheres to the "first-to-file" rule, which holds that when two related cases are pending in two district courts, the court with the later-filed action can refuse to hear the case if the issues raised by both cases "substantially overlap." *The Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). The principles of comity and sound judicial administration underlie the rule, the aim of which is "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (internal quotations omitted). Once the court in the later-filed action finds the issues involved are likely to substantially overlap, it is up to that court to resolve the question of whether both cases should proceed. *Mann Mfg., Inc. v. Hortex, Inc.* 439 F.2d 403, 408 (5th Cir. 1971); *Save Power Ltd.*, 121 F.3d at 950 (stating that "[t]he crucial inquiry is one of substantial overlap.").

Thus, the Court must first decide whether the issues involved in the Georgia action are substantially similar to those involved in this case. *Save Power Ltd.*, 121 F.3d at 950. The two actions must "involve closely related questions or common subject matter or that the core issues substantially overlap; they need not be identical." *Rooster Prod. Int'l, Inc. v. Custom Leathercraft Mfg. Co.* 2005 WL 357657, *2 (W.D. Tex. Feb. 1, 2005); *see also West Gulf Maritime Assoc. v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985) (claims must "overlap on the substantive issues"). Thus, the central question here is whether L-3's antitrust and tortious interference claims asserted in this case substantially overlap with the misuse of trade secrets and breach of license agreement claims at issue in the Georgia action.

If the Court does find sufficient similarity, the Court must still exercise discretion. A court's

power to stay proceedings is appropriate in "rare" circumstances, requiring a party to show that the "current litigation is duplicative of litigation in another court." *Amni Innovation Corp. v. Classic World Imports, Inc.*, 2005 WL 65611, *1 (N.D. Tex. Jan. 12, 2005). The cases in each district "should be more than merely related". *Buckalew v. Celanese, Ltd.*, 2005 WL 2266619, *3 (S.D. Tex. Sept. 16, 2005); *see Save Power Ltd.*, 121 F.3d at 948-49 (holding that there was substantial overlap when both the original suit and subsequent action centered on the interpretation of a provision in the same agreement).

Here, the Court fails to find any substantially overlapping issues between the two actions and declines to stay the instant proceedings. In the litigation before the Georgia court, Lockheed claims L-3 unlawfully used proprietary data concerning the P-3 aircraft to secure and execute a contract with the Republic of Korea. Here, L-3 alleges Lockheed is engaging in anti-competitive conduct and tortiously interfering with current and prospective business relationships and contracts. The Court finds that L-3's anti-trust and tortious interference claims are broader in scope, alleging that Lockheed has engaged in exclusionary conduct unrelated to its alleged data rights. *Cf. Mann Mfg., Inc.*, 439 F.2d at 407 (finding substantial overlap where evidence indicated that the overall content of each patent suit was far from being capable of independent development, and would likely overlap to a substantial degree). For example, L-3 alleges that Lockheed has blocked L-3's access to "tooling," creating significant production delays, which is exclusionary conduct, but unrelated to Lockheed's alleged data rights. (*See* Orig. Compl., ¶ 27). Furthermore, L-3 alleges that Lockheed used its market power to intimidate L-3's vendors with baseless litigation, as well as crafting sham license agreements that forbade vendors from supplying parts to L-3, potentially affecting L-3's relationships outside of its current contract with Korea. Moreover, as Judge Pannell aptly notes, L-3's

allegations are based on operative facts occurring in 2006, well after Lockheed filed its suit in Georgia. (Doc. 16-2, Ga. Court Order at 5).[1]

Lockheed makes much ado about duplicative evidence, such as the proofs necessary to the trade secret and sham litigation claims. The stage of the Georgia action, however, is key. There, the parties have already engaged in extensive discovery, a Special Master has been resolving numerous discovery disputes and dispositive motions have been filed. During the pendency of the resolution by the U.S. District Court in Georgia and the Eleventh Circuit, the Court finds no real danger of duplicative discovery or substantial prejudice to Lockheed. The Court finds that it would be more efficient to allow the instant action to proceed forward into discovery relevant to L-3's claims that were not brought in Georgia and not duplicative of what areas of discovery have already been explored in the Georgia action. As a corollary, if in the Georgia action it is ultimately determined that L-3's claims were compulsory counterclaims, discovery on those claims will already be well advanced.

Furthermore, with the foreknowledge that decisions from Judge Pannell and the 11th Circuit concerning Lockheed's trade secret claims may impact this action, the Court will take the appropriate actions with the principles of comity in mind. It is therefore difficult to conceive of any substantial likelihood of conflicting rulings. *Cf. Wolf Designs, Inc. v. Donald Mcevoy Ltd., Inc.*, 341

---

[1] The Georgia court, in denying Lockheed's motion to enjoin the Texas action, held that L-3's claims did not arise from the same operative facts in Lockheed's original petition and found only "minimal overlap" which "does not equate to 'arising from the same operative facts.'" (Doc. 16-2, Ga. Court Order at 5). Admittedly, Judge Pannell examined the instant claims through a compulsory counterclaim lens of "same operative facts," which is fundamentally different from looking at issues that "substantially overlap." This distinction, however, makes no difference in this case. While some of the issues in the two cases are related, the claims and issues are distinct enough to permit the instant action to proceed forward.

F. Supp. 2d 639, 645 (N.D. Tex. 2004) (stating that there was a risk of inconsistent rulings between each district court because the same patent was at issue).

### III. Conclusion

For the reasons discussed above, the Court DENIES Defendant's Motion for Stay of All Proceedings.

**SO ORDERED.**

**January 8, 2008**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE